IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GEMINI INSURANCE COMPANY, )<br><br>Plaintiff, )<br><br>vs. )<br><br>KUKUI`ULA DEVELOPMENT COMPANY )<br>(HAWAII), LLC; DMB KUKUI`ULA, )<br>LLC; KDC, LLC; DMB ASSOCIATES )<br>(HAWAII), INC.; and A & B )<br>PROPERTIES, INC., et al., )<br><br>Defendants. )<br>_____ ) | CIVIL NO. 10-00637 LEK-BMK |

**ORDER DENYING DEFENDANTS/COUNTER CLAIMANTS/THIRD-PARTY
PLAINTIFFS KUKUI'ULA DEVELOPMENT COMPANY (HAWAII), LLC,
DMB KUKUI'ULA, LLC, KDC, LLC, DMB ASSOCIATES (HAWAII), INC.
AND A&B PROPERTIES, INC.'S  MOTION TO DISMISS
CERTAIN UNDERWRITERS AT LLOYDS' CROSS CLAIM**

Before the Court is Kukui'ula Development Company

(Hawaii), LLC; DMB Kukui'ula, LLC; KDC, LLC; DMB Associates

(Hawaii), and A&B Properties, Inc.'s (collectively "KDC") Motion

to Dismiss Certain Underwriters at Lloyds' Cross Claim, Pursuant

to Fed. R. Civ. P. 12(b)(6) ("Motion"), filed on December 21,

2011.  Certain Underwriters at Lloyds ("Lloyds") filed its

opposition on January 31, 2012, and KDC filed its reply on

February 7, 2012.  Plaintiff Gemini Insurance Company

("Plaintiff" or "Gemini") filed a Statement of No Position on

January 31, 2012.  This matter came on for hearing on

February 21, 2012.  Appearing on behalf of KDC were James C.

McWhinnie, Esq., and Joseph Oliva, Esq., appearing on behalf of
Lloyds was David Harada-Stone, Esq., appearing on behalf of
Gemini was J. Patrick Gallagher, Esq., and appearing on behalf of
Indian Harbor Insurance Company were Eric Kunisaki, Esq., and
Jessica La Londe, Esq.  After careful consideration of the
Motion, supporting and opposing memoranda, and the arguments of
counsel, KDC's Motion is HEREBY DENIED for the reasons set forth
below.

## BACKGROUND

KDC was engaged in the planning, development, and
construction of the Kukui'ula Residential Community Project on
Kaua`i ("Project").  KDC purchased different insurance policies
from the three carriers in this action: (1) a Commercial General
Liability ("CGL") policy from Gemini for September 23, 2005 to
September 23, 2008 ("Gemini Policy"); (2) a CGL policy from
Lloyds for September 23, 2008 to September 23, 2010 ("Lloyds
Policy"); and (3) a Pollution Legal Liability policy from Indian
Harbor Insurance Company ("Indian Harbor Policy").  The Gemini
and Lloyds policies are both CGL policies, which were issued for
consecutive two and three-year periods.

In 2009, three lawsuits were filed against KDC, arising
out of the work performed on the Project: (1) Schredder v.
Kukui'ula Development Co. (Hawaii), LLC, Civ. No. 09-1-0045,
Circuit Court of the Fifth Circuit, State of Hawai`i; (2)

Hawaiian Insurance & Guaranty Co., Ltd. v. Kukui'ula Development Co. (Hawaii), LLC, Civ. No. 09-1-0046, Circuit Court of the Fifth Circuit, State of Hawai`i; and (3) Ass'n of Apartment Owners of Lawai Beach Resort v. Kukui'ula Development Co. (Hawaii), LLC, Civ. No. 09-1-0109, Circuit Court of the Fifth Circuit, State of Hawai`i (collectively "Underlying Actions"). In addition to the Underlying Actions, Patti Erickson ("Erickson") presented a claim to KDC for alleged damage to her property caused by work performed on the Project ("Erickson claim"). Erickson has not filed suit.

On November 2, 2009, Plaintiff filed a Complaint for declaratory judgment against KDC. Plaintiff filed a Supplemental Complaint adding Lloyds as an additional defendant on August 31, 2011, claiming that Lloyds owes Gemini reimbursement of defense fees under the Lloyds Policy.

On November 18, 2011, KDC filed a First Amended Cross-Claim against Lloyds, seeking a declaration that Lloyds owes it a duty to provide coverage under the Lloyds Policy for the Underlying Actions, Erickson claim, and various additional claims. [KDC's First Amended Cross-Claim (dkt. no. 135) at ¶¶ 26-34 .] KDC also alleges breach of the implied covenant of good faith and fair dealing and bad faith with respect to the duty to settle. [Id. at ¶¶ 35-65.] Lloyds filed its Answer and Cross-Claim on December 1, 2011 ("Lloyds' Cross-Claim"), alleging a

3

claim for declaratory relief that coverage is excluded under the
Lloyds Policy, and that it has no duty to defend or indemnify
KDC.  [Lloyds' Cross-Claim (dkt. no. 157-1) at ¶¶ 19-26 .]

## I. **KDC's Motion**

KDC moves to dismiss Lloyds' Cross-Claim, arguing that
Lloyds previously agreed to provide coverage for KDC subject to a
reservation of rights, but that Lloyds has never contributed to
the defense of the Underlying Actions.  Instead, Lloyds filed its
Cross-Claim, which KDC argues it should be estopped from doing,
given its unreasonable failure to defend KDC.  [Motion at 2-3.]

The Lloyds Policy includes the following relevant
insuring language:

SECTION I – COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE
LIABILITY

1. Insuring Agreement.

a.   We will pay those sums in excess of the
Retained Amount that the insured becomes legally
obligated to pay as damages because of "bodily
injury" or "property damage" to which this
insurance applies.  We will have the right and
duty to defend the insured against any "suit"
seeking those damages.  However, we will have no
duty to defend the insured against any "suit"
seeking damages for "bodily injury" or "property
damage" to which this insurance does not apply.
We may, at our discretion, investigate any
"occurrence" and settle any claim or "suit" that
may result.  But:

(1) The amount we will pay for damages and
"defense expenses" is limited as described in
SECTION III

4

LIMITS OF INSURANCE; and
(2) Our right and duty to defend ends when we
have used up the applicable Limits of
Insurance in the payment of judgments,
settlements and/or "defense expenses" under
Coverage A or B.

Our obligation to defend any claim or "suit" is
governed by DEFENSE AND SETTLEMENT – COVERAGES A
AND B. "Defense expenses" reduce the applicable
Limits of Insurance.

b. This insurance applies to "bodily injury" and
"property damage" which is not included in the
"products-completed operations hazard" only if:

(1) The "bodily injury" or "property damage"
is caused by an "occurrence that takes place
in the coverage territory"; and
(2) The "bodily injury" or "property damage"
occurs during the policy period.
. . . .

[Lloyds' Cross-Claim at ¶ 14.]

The Lloyds Policy also includes the following relevant

exclusions:

2. Exclusions.

This insurance does not apply to:

a. Expected or Intended Injury

"Bodily injury" or "property damage" expected
or intended from the standpoint of the
insured. This exclusion does not apply to
"bodily injury" resulting from the use of
reasonable force to protect persons or
property.
. . . .

f. Pollution

(1) "Bodily injury" or "property damage"
arising out of the actual, alleged or

5

threatened discharge, dispersal, seepage,
migration, release or escape of "pollutants":

    (a) At or from any premises, site or
    location which is or was at any time
    owned or occupied by, or rented or
    loaned to, any insured.  However, this
    subparagraph does not apply to:

        (i) "Bodily injury" if sustained
        within a building and caused by
        smoke, fumes, vapor or soot from
        equipment used to heat that
        building;
        (ii) "Bodily injury" or "property
        damage" for which you may be held
        liable, if you are a contractor and
        the owner or lessee of such
        premises, site or location has been
        added to your policy as an
        additional insured at that
        premises, site or location and such
        premises, site or location is not
        or never was owned or occupied by,
        or rented or loaned to, any
        insured, other than that additional
        insured; or
        (iii) "Bodily injury" or "property
        damage" arising out of heat, smoke
        or fumes from a "hostile fire";
. . . .

    (2) Any loss, cost or expense arising out of
any:

        (a) Request, demand, order or statutory
        or regulatory requirement that any
        insured or others test for, monitor,
        clean up, remove, contain, treat,
        detoxify or neutralize, or in any way
        respond to, or assess the effects of,
        "pollutants". . . .

x.    Continuing or Progressive Damage or Injury

    "Bodily injury" or "property damage" which is
continuing or progressive and which commenced
prior to the inception date of this policy.

This exclusion shall apply whether the
insured's legal obligation to pay for damages
for "bodily injury" or "property damage" was
established before the inception date of this
policy.

[Id. at ¶ 15.]

The Lloyds Policy also includes the following relevant

definitions:

SECTION IV – DEFINITIONS

14. "Occurrence" means an accident including
continuous or repeated exposure to the same
general, harmful conditions. In the event of
continuing or progressive "bodily injury" or
"property damage" over any length of time, such
"bodily injury" or "property damage" shall be
deemed to be one "occurrence", and shall be deemed
to occur only when such "bodily injury" or
"property damage" first commenced.

16. "Pollutants" means any solid, liquid, gaseous
or thermal irritant or contaminant, including
smoke, vapor, soot, fumes, acids, alkalis,
chemicals and waste. Waste includes materials to
be recycled, reconditioned or reclaimed.

18. "Property damage" means:

a. Physical injury to tangible property,
including all resulting loss of use of that
property. All such loss of use shall be
deemed to occur at the time of the physical
injury that caused it; or

b. Loss of use of tangible property that is
not physically injured. All such loss of use
shall be deemed to occur at the time of the
"occurrence" that caused it.

. . . .

[Id. at ¶ 16.]

The Lloyds Policy provides as follows with regard to

7

Lloyds' defense and settlement obligations:

> DEFENSE AND SETTLEMENT – COVERAGES A AND B
>
> 2. WITHIN THE RETAINED AMOUNT
>
> We do not have the duty to investigate any "occurrence", offense, claim or "suit" unless and until the Retained Amount is exhausted with respect to that "occurrence", offense, claim or "suit". However, we may at our discretion and expense, participate with you in the investigation of any such "occurrence" and the defense of any such claim or "suit" that may result.
>
> 3. IN EXCESS OF THE RETAINED AMOUNT:
>
>> a. Once the Retained Amount is exhausted with respect to any specific "occurrence", offenses, claim or "suit", we shall thereafter have the right and duty to defend that "occurrence", offense, claim or "suit".
>>
>> b. When we have the duty to investigate and/or defend pursuant to Paragraph 3.a. above we may, at our sole discretion settle any such "occurrence", offense, claim or "suit". . . .
>>
>> d. In no event shall you agree to settlement in excess of the Retained Amount without our prior written approval.

[Id. at ¶ 17.]

KDC argues that Lloyds' post-tender conduct confirms coverage for the Underlying Actions. According to KDC, pursuant to a July 7, 2011 Reservation of Rights Letter,[1] Lloyds agreed that at least some of the Underlying Actions were covered by the Lloyds Policy, and therefore, Lloyds' duty to defend was

---

[1] The letter is attached as Exhibit 1 to the Declaration of Jonathan H. Steiner ("Steiner Decl.").

triggered. [Mem. in Supp. of Motion at 9 (citing <u>Hawaiian</u>
<u>Holiday Macadamia Nut Co., Inc. v. Industrial Indem. Co.</u>, 76
Hawai'i 166, 169 (1994); <u>Commerce & Industry Ins. Co. v. Bank of</u>
<u>Haw.</u>, 73 Haw. 322, 326 (1992)).] KDC argues that it reasonably
understood that Lloyds had accepted coverage, subject to a
reservation of rights. [<u>Id.</u>]

In support of its argument, KDC relies on several
documents extrinsic to the Cross-Claim, including: (1) July 7,
2011 letter to KDC from Eric L. Shoikhetman (Exh. 1); (2)
July 25, 2011 letter from Joseph L. Oliva to Mr. Shoikhetman
(Exh. 2); (3) August 16, 2011 e-mail from Joy Clemente to
Mr. Shoikhetman (Exh. 3); (4) August 25, 2011 e-mail from
Jonathan H. Steiner to Mr. Shoikhetman (Exh. 4); (5) August 25,
2011 email from Mr. Shoikhetman to Mr. Steiner, Howard Wollitz
and Stephen Yurich (Exh. 5); and (6) Lloyds' Responses to Indian
Harbor Insurance Company's Interrogatories (Exh. 6).[2] KDC cites
the above correspondence to show that Lloyds never gave KDC any
indication that it was not defending the Underlying Actions, in
light of its initial promise to provide coverage. [<u>Id.</u> at 5-7.]

KDC also argues that, regardless of the July 7, 2011
Reservation of Rights Letter, Lloyds is not relieved of the costs
incurred in defending its insured where the insurer was

_____

[2] Exhibits 1 through 5 are attached to the Steiner
Declaration; Exhibit 6 is attached to the Declaration of James C.
McWhinnie ("McWhinnie Decl.").

obligated, in the first instance, to provide such a defense. [Id. (citing First Ins. Co. of Hawaii, Inc. v. State of Hawai'i, 66 Haw. 413, 422 (1983)).]

In its Cross-Claim, Lloyds also alleges that any injuries and/or damages alleged in the Underlying Actions were not caused by an "occurrence" as defined under the policy. KDC asserts that Lloyds should be estopped from taking such inconsistent positions after promising KDC a defense in the Underlying Actions and, then, failing to perform on such promise. [Id. at 10 (citing AIG Hawai'i Ins. Co. Inc., v. Smith, 78 Hawai'i 174, 177 (1995)).]

KDC contends that it can show detrimental and reasonable reliance as follows: after Lloyds agreed there was coverage under the Policy, KDC requested that Lloyds immediately provide a defense and arranged for the defense attorney's invoices to be forwarded to Lloyds for payment. According to KDC, Lloyds gave no indication it was not defending the Underlying Actions and it relied on this representation. KDC claims it is prejudiced by Lloyds' failure to defend due to continuing erosion of Gemini's cannibalizing policy; as defense costs in the Underlying Actions increase, a decreasing amount is available under the Gemini Policy for indemnity or for settlement. Further, the Gemini Policy does not cover damage sustained after its policy expired. KDC states it could

potentially be left bare of coverage based upon Lloyds' denial of coverage.  [Id. at 12-13.]

## II.  **Lloyds' Memorandum in Opposition**

Lloyds first addresses KDC's reliance on evidence and documents not attached to the Cross-Claim in its Motion.  It states that, if the Court is to treat KDC's motion as a motion for summary judgment, then the Motion must be denied because KDC has failed to point to evidence demonstrating the absence of a genuine issue of material fact and/or that KDC is entitled to judgment as a matter of law on the Cross-claim.  [Mem. in Opp. at 1-2.]  It argues that none of the exhibits attached to KDC's motion was attached to the Cross-Claim or incorporated therein by reference, nor were the contents of the exhibits alleged in the Cross-Claim.  It maintains that the exhibits, including the letters and emails, must be construed as simply acknowledging notice of the underlying claims against KDC and reserving Lloyds' rights under its policy, not as conceding coverage or promising a defense.  [Id. at 9-10 n.3.]

Lloyds purports that it has neither denied KDC's claim nor refused to provide KDC with a defense.  "Rather, the claim remains under review."  [Id. at 9 n.2.]  Lloyds argues that all that KDC's exhibits show is that Lloyds acknowledged notice of the Underlying Actions, reserved its rights based on the insuring language and exclusions in its policy, and requested additional

information.  Here, Lloyds maintains it has yet to undertake or
control KDC's defense in the Underlying Actions where KDC has
been defended by its own defense counsel, the McCorriston firm,
since the inception of the Underlying Actions, and KDC's CGL
carrier, Gemini – which unlike Lloyds had a policy in effect at
the time the underlying claims first arose – has been paying for
KDC's defense.  Thus, KDC has suffered no prejudice as a result
of the position taken by Lloyds in its Cross-Claim.  [Id. at 14-
15 (citing Delmonte v. State Farm Fire & Cas. Co., 90 Haw. 39,
51, 975 P.2d 1159, 1171 (Haw. 1999) (holding that insurer was not
estopped from disclaiming coverage where it had promptly issued a
reservation of rights and never dissuaded insured from obtaining
private counsel)).]

          It argues that the erosion of the limits under the
Gemini Policy does not constitute "prejudice."  If the Court, or
a jury, ultimately determines that Lloyds has a duty to defend
and/or indemnify KDC, then Lloyds notes that it will be required
to reimburse KDC or Gemini for defense costs and to indemnify
KDC, as the case may be.  If not, then KDC cannot complain about
the "loss" of coverage it never had.  [Id. at 16-17.]

**III.  <u>KDC's Reply</u>**

          In its reply, with respect to the July 7, 2011
Reservation of Rights Letter, KDC argues that it "is a notice by
the insurer to the insured that the insured will <u>defend</u> the

                              12

insured, but that the insurer is not waiving any defenses it may have under the policy." [Reply at 13 (emphasis KDC's).] It argues that, as a matter of law, Lloyds affording KDC a defense under a reservation of rights "'retains any defenses the insurer has under the policy, [but] it does not relieve the insurer of the costs incurred in defending its insured where the insurer was obligated, in the first instance, to provide such a defense.'" [Id. (quoting First Ins. Co. of Hawai`i v. State, 66 Haw. 413, 422, 665 P.2d 648, 654 (1983)) (emphasis KDC's).]

KDC states that:

> In confirmation that Lloyds had agreed to defend, KDC forwarded to Lloyds status reports and invoices reflecting the attorneys' fees and costs incurred in connection with the defense for each of the underlying actions. Over seven (7) months later, Lloyds now claims to be still "reviewing" after already agreeing to defend as a matter of law under its Reservation of Rights agreement of July 7, 2011. An unreasonable delay in payment of benefits under the policy will warrant recovery for compensatory damages from the insurer.

[Id. at 13-14.]

## STANDARD

## I. Motion to Dismiss Converted to Motion for Summary Judgment

Under Fed. R. Civ. P. 12(d):

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Because the Court relies on materials submitted by KDC that are outside of the pleadings in ruling on the Motion, and because the parties had a reasonable opportunity to present all material that is pertinent thereto, the Court treats the Motion as one for summary judgment.

## II.  <u>Summary Judgment</u>

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

> Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  <u>See Celotex [Corp. v. Catrett]</u>, 477 U.S. [317,] 323 [(1986)].  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp.</u>, 477 U.S. at 323). "A fact is material if it could affect the outcome of the suit under the governing substantive law." <u>Miller [v. Glenn Miller Prods., Inc.]</u>, 454 F.3d [975,] 987 [(9th Cir. 2006)].
> When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything."  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything. <u>Nissan Fire</u>, 210 F.3d at 1102-03.  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden

then shifts to the nonmoving party to establish,
beyond the pleadings, that there is a genuine
issue for trial." <u>Miller</u>, 454 F.3d at 987.  This
means that the nonmoving party "must do more than
simply show that there is some metaphysical doubt
as to the material facts." <u>Matsushita Elec.
Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
586 (1986) (footnote omitted).  The nonmoving
party may not rely on the mere allegations in the
pleadings and instead "must set forth specific
facts showing that there is a genuine issue for
trial." <u>Porter v. Cal. Dep't of Corr.</u>, 419 F.3d
885, 891 (9th Cir. 2005) (quoting <u>Anderson v.
Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)).
"A genuine dispute arises if the evidence is such
that a reasonable jury could return a verdict for
the nonmoving party." <u>California v. Campbell</u>, 319
F.3d 1161, 1166 (9th Cir. 2003); <u>Addisu v. Fred
Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000)
("There must be enough doubt for a 'reasonable
trier of fact' to find for plaintiffs in order to
defeat the summary judgment motion.").

    On a summary judgment motion, "the nonmoving
party's evidence is to be believed, and all
justifiable inferences are to be drawn in that
party's favor." <u>Miller</u>, 454 F.3d at 988
(quotations and brackets omitted).

<u>Rodriquez v. Gen. Dynamics Armament & Technical Prods., Inc.</u>, 696

F. Supp. 2d 1163, 1176 (D. Hawai`i 2010) (some citations

omitted).

## **DISCUSSION**

KDC seeks to estop Lloyds from asserting its Cross-

Claim that it has no duty to defend KDC in the Underlying

Actions.  In <u>Sentinel Insurance Co., Ltd. v. First Insurance Co.

of Hawai`i, Ltd.</u>, 76 Hawai`i 277, 875 P.2d 894 (1994), the

Hawai`i Supreme Court discussed the application of estoppel to an

insurer's decision whether or not to defend and the effect of a

change of position:

> The proffered bases for applying such a rule have included: (1) the insurer's failure to preserve the coverage defense by defending under a reservation of rights or seeking declaratory relief on its duty to defend . . . ; (2) the inequity of allowing the insurer to benefit from policy provisions and exclusions after the insurer has shirked its responsibilities thereunder. . . ; or (3) the similar inequity of allowing the insurer to second-guess the defense undertaken as a result of its breach.
>
> . . . .
>
> Further, we fail to see how there can be an estoppel in a case where the insurer refuses to defend by taking the position that there is no coverage under the policy and then maintains that same position in defending the insured's suit for indemnification. In that situation, "no estoppel is involved in any traditional sense because, in refusing to defend a claim, an insurer makes no misrepresentation on which the insured relies to its detriment." Blanket application of coverage by waiver or estoppel, on the contrary, would result in the insured receiving a windfall. The insured would obtain a benefit it did not bargain for where the facts developed in discovery or at trial after the duty to defend has been breached establishes that the insured was not entitled to coverage. As one scholar of insurance has noted:

> > Where there is no coverage, the greatest injury that the insured could have suffered by a failure to defend is the cost of defense-the judgment would have been his responsibility regardless. [Courts holding to the contrary] apparently rel[y] on estoppel and . . . breach of contract. Since the insured was in no way misled there could be no estoppel. A breach of contract of course waives a forfeiture but it does not nor should it create a new contract.

> [7C J.] Appleman, [<u>Insurance Law and Practice</u>,] § 4689, at 215 n.13 [(1979)].
>
> . . . .
>
> Certainly, in individual cases, the

> application of waiver or estoppel will be
> appropriate-for example, where the insured has
> been prejudiced in some way by the insurer's
> failure to provide a defense. . . , or where the
> insurer has taken inconsistent positions with
> regard to defense and coverage. See, e.g.,
> Tomerlin v. Canadian Indem. Co., 61 Cal.2d 638,
> 394 P.2d 571, 39 Cal. Rptr. 731 (1964) (insured
> relinquished personal attorney's representation
> when agent for insurer represented that insurer
> was liable for coverage and would abandon
> reservation of rights).

76 Hawai'i at 295-96, 875 P.2d at 912-13 (some citations omitted).

Further, absent manifest injustice, "the party invoking equitable estoppel must show that he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, *and* that such reliance was reasonable." AIG Hawai'i Ins. Co. v. Smith, 78 Hawai'i 174, 179, 891 P.2d 261, 266 (1995) (emphasis in original) (quotation marks omitted).

KDC bears the burden of proving the affirmative defense of estoppel. See State Farm Fire & Cas. Co. v. Vogelgesang, Civil No. 10-00172 SOM/BMK, 2011 WL 2670078, at *10 (D. Hawai'i July 6, 2011) ("Whether State Farm is estopped from attempting to decline coverage is an affirmative defense that Defendants, not State Farm, bear the burden of proving." (citing Cal. Dairies Inc. v. RSUI Indem. Co., 617 F. Supp. 2d 1023, 1048 n.11 (E.D. Cal. 2009) ("To demonstrate waiver, the insured bears the burden of proof to demonstrate that the carrier intentionally relinquished a right or that the carrier's acts are so

inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished."))). The Court finds that KDC has not met its burden on summary judgment with respect to its estoppel argument.

The July 7, 2011 Reservation of Rights Letter upon which KDC relies indicates that:

> This letter will serve to confirm that Underwriters have <u>received notice</u> of Hawaiian Insurance and Guaranty Company, Ltd.'s ("HIGC") subrogation claim related to property damage allegedly sustained as a result of KDC's construction activities at Kukui'ula in Koloa, Hawaii (the "project"). Based on the initial information received, Underwriters are reserving rights, as discussed in more detail below.
> . . . .
> Pursuant to all terms and conditions of Policy No. 595/XO029960S, Underwriters <u>have accepted notice of this loss</u>. Underwriters' acceptance of notice is subject to a full and complete reservation of rights pursuant to all terms and conditions of the policy.
> . . . .
> We have been advised that this matter has also been tendered to Gemini Insurance Company. In addition, we have been advised that KDC has coverage for pollution claims related to dust migration from the project site. We request that KDC provide us with all communications from Gemini and any other carriers that discuss their acceptance (or denial) of coverage for the claims in this matter so that we may coordinate efforts.

[Steiner Decl., Exh. 1 (7/7/11 Letter), at 2-3, 7 (emphasis added)).]

Drawing all justifiable inferences in Lloyds' favor, as the Court must on KDC's request for summary judgment, the July 7, 2007 Reservation of Rights letter does not accept the tender of

18

KDC's defense in the Underlying Actions. It is clear that the letter does not state that any of the claims in the Underlying Actions are covered, or undertake to provide KDC with a defense. Rather, it acknowledges receiving "notice" of the claims and "notice of this loss". It further requests additional information and reserves Lloyds' rights under the policy.

Subsequent communications with KDC's counsel confirm that Lloyds did not accept the tender of KDC's defense. In an August 25, 2011 email from Jonathan Steiner, Esq., KDC's counsel in the Underlying Actions, to Eric Shoikhetman, Esq., Lloyds' counsel, Mr. Steiner states:

> It is my understanding, based on your prior correspondence dated July 7, 2011, that while Lloyds has reserved its rights, it has agreed . . . to accept defense of the above referenced matter. Circumstances have recently arisen under which a settlement of this matter may be possible. Attached hereto are (1) a letter from myself to Gemini requesting settlement authority; and (2) a subsequent letter from the Plaintiff demanding settlement.

[Id., Exh. 4 (8/25/22 Email from Steiner to Shoikhetman).] Although Mr. Steiner appeared to believe that Lloyds had accepted KDC's defense, in a responding email, Mr. Shoikhetman wrote to Mr. Steiner as follows:

> Notwithstanding any and all coverage defenses raised in Underwriters' ROR letters of July 7 (which Underwriters continue to reserve all rights on), we have not yet been provided with information that we required to evaluate this matter and provide our recommendations to Underwriters, which is necessary prior to

19

> obtaining any type of settlement authority, if
> merited.
> . . . .
> By copy of this e-mail to Mr. Steiner, we request
> to be provided with the above information, which
> include all defense counsel reports regarding this
> matter, as soon as possible. As noted above,
> Underwriters continue to reserve all rights under
> their policy as set forth in their ROR letters of
> July 7, 2011. Once were are in receipt and review
> the requested information, we will respond to the
> issues raised in your e-mails accordingly.

[Id., Exh. 5 (8/25/22 Email from Shoikhetman to Steiner).] These

communications confirm that Lloyds has neither accepted nor taken

control of KDC's defense in the Underlying Actions by appointing

counsel, nor has it withdrawn is reservation of rights. Although

the current record shows that Lloyds has not unequivocally

rejected KDC's tender, for summary judgment purposes, KDC has not

established that Lloyds accepted coverage and then changed its

position. The Hawaiʻi Supreme Court has stated as follows with

respect to an insurer's change of position:

> the "position" – a change from which would merit
> application of estoppel - refers to an insurer's
> decision regarding coverage *generally*. Estoppel
> is particularly appropriate where the insurer,
> either directly or through an agent, as in
> Tomerlin [v. Canadian Indem. Co., 394 P.2d 571,
> (Cal. 1964)], admits coverage under a policy of
> insurance, yet later denies coverage. However,
> where the insurer maintains the position that it
> will not defend an insured because there is no
> coverage under a policy, estoppel should not apply
> because the insurer has not changed its position
> regarding whether it would cover its insured, and,
> therefore, the insured has not relied on any of
> the insurer's representations to his or her
> detriment.

<u>State Farm Mut. Auto. Ins. Co. v. GTE Hawaiian Telephone Co.,</u>
<u>Inc.</u>, 81 Hawai'i 235, 243, 915 P.2d 1336, 1344 (1996) (emphasis
in original).  Here, KDC has not established for summary judgment
purposes that Lloyds changed its position regarding coverage.
The Court concludes that KDC has not established the requirements
for estoppel as a matter of law and, therefore, DENIES the
Motion.

**<u>CONCLUSION</u>**

On the basis of the foregoing, Defendants Kukui'ula
Development Company (Hawaii), LLC; DMB Kukui'ula, LLC; KDC, LLC;
DMB Associates (Hawaii), and A&B Properties, Inc.'s Motion to
Dismiss Certain Underwriters at Lloyds' Cross Claim, Pursuant to
Fed. R. Civ. P. 12(b)(6), filed on December 21, 2011, is HEREBY
DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 29, 2012.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**GEMINI INSURANCE COMPANY V. KUKUI`ULA DEVELOPMENT COMPANY**
**(HAWAII), LLC, ET Al; CIVIL NO. 10-00637 LEK-BMK; ORDER DENYING**
**DEFENDANTS/COUNTER CLAIMANTS/THIRD-PARTY PLAINTIFFS KUKUI`ILA**
**DEVELOPMENT COMPANY (HAWAII), LLC, DMB KUKUI`ULA, LLC, KDC, LLC,**
**DMB ASSOCIATES (HAWAII), INC. AND A&B PROPERTIES, INC.'S MOTION**
**TO DISMISS CERTAIN UNDERWRITERS AT LLOYDS' CROSS CLAIM**