IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

GEMINI INSURANCE COMPANY,      )      CIVIL NO. 10-00637 LEK-BMK
                               )
          Plaintiff,           )
                               )
     vs.                       )
                               )
KUKUI`ULA DEVELOPMENT COMPANY  )
(HAWAII), LLC; DMB KUKUI`ULA,  )
LLC; KDC, LLC; DMB ASSOCIATES  )
(HAWAII), INC.; and A & B      )
PROPERTIES, INC., et al.,      )
                               )
          Defendants.          )
_____)


**ORDER GRANTING IN PART AND DENYING IN PART
INDIAN HARBOR INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AGAINST KDC
AND GEMINI INSURANCE COMPANY; AND DENYING PLAINTIFF
GEMINI INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court are two motions for summary judgment:

(1) Indian Harbor Insurance Company's ("Indian Harbor") Motion

for Summary Judgment or, in the Alternative, Partial Summary

Judgment Against KDC and Gemini Insurance Company, filed on

July 1, 2011 ("Indian Harbor Motion") [dkt. no. 54]; and (2)

Plaintiff Gemini Insurance Company's ("Plaintiff" or "Gemini")

Motion for Partial Summary Judgment, filed on July 5, 2011

("Gemini Motion") [dkt. no. 59].  The parties filed their

respective memoranda in opposition on November 21, 2011, and

their replies on November 28, 2011.  These matters came on for

hearing on January 30, 2012.  Appearing on behalf of Gemini was

J. Patrick Gallagher, Esq., and appearing on behalf of Indian

Harbor were Michael Tanoue, Esq., and Max Stern, Esq., appearing

on behalf of Kukui'ula Development Company (Hawaii), LLC; DMB

Kukui'ula, LLC; KDC, LLC; DMB Associates (Hawaii), and A&B

Properties, Inc. (collectively "KDC" or "Defendants") were

James C. McWhinnie, Esq., and Joseph Oliva, Esq., and appearing

on behalf of Certain Underwriters at Lloyds ("Lloyds") was

Richard Miller, Esq.,  After careful consideration of the

motions, supporting and opposing memoranda, and the arguments of

counsel, the Indian Harbor Motion is HEREBY GRANTED IN PART AND

DENIED IN PART[1] and the Gemini Motion is HEREBY DENIED for the

reasons set forth below.

## BACKGROUND

On November 2, 2009, Plaintiff filed a Complaint for

declaratory judgment against KDC.  KDC was engaged in the

planning, development, and construction of the Kukui'ula

Residential Community Project on Kaua`i ("Project").  KDC

purchased different insurance policies from the three carriers to

this action: (1) a Commercial General Liability ("CGL") policy

from Gemini for September 23, 2005 to September 23, 2008 ("Gemini

Policy"); (2) a CGL policy from Lloyds for September 23, 2008 to

---

[1] The Indian Harbor Motion is granted in part as to its duty
to defend two KDC entities not named as insureds under the
policy, and as to Gemini's duty to defend based on the pollution
exclusion, and is denied in all other respects.

September 23, 2010 ("Lloyds Policy"); and (3) a Pollution Legal
Liability policy from Indian Harbor ("Indian Harbor Policy").
The Gemini and Lloyds policies are both CGL policies, which were
issued for consecutive two and three-year periods, and both
contain similar exclusionary language regarding pollution claims.
The Indian Harbor Policy affords coverage for claims arising from
alleged polluting activities, and has a ten-year claims-made
policy period running concurrently with both the Gemini and
Lloyds policies, *i.e.*, from December 31, 2003 to December 31,
2013.

In 2009, three lawsuits were filed against KDC, arising
out of the work performed on the Project: (1) <u>Schredder v.
Kukui'ula Development Co. (Hawaii), LLC</u>, Civ. No. 09-1-0045,
Circuit Court of the Fifth Circuit, State of Hawai`i ("Schredder
Action"); (2) <u>Hawaiian Insurance & Guaranty Co., Ltd. v.
Kukui'ula Development Co. (Hawaii), LLC</u>, Civ. No. 09-1-0046,
Circuit Court of the Fifth Circuit, State of Hawai`i ("HIG
Action"); and (3) <u>Ass'n of Apartment Owners of Lawai Beach Resort
v. Kukui'ula Development Co. (Hawaii)</u>, LLC, Civ. No. 09-1-0109,
Circuit Court of the Fifth Circuit, State of Hawai`i ("AOAO
Action") (all three collectively "Underlying Actions").  In
addition to the Underlying Actions, Patti Erickson ("Erickson")
presented a claim to KDC for alleged damage to her property
caused by work performed on the Project ("Erickson claim").

Erickson has not filed suit.  KDC tendered defense of the
Underlying Actions to both Gemini, Lloyds, and Indian Harbor;
Gemini is currently providing a defense, while Indian Harbor and
Lloyds are not.

Gemini filed a First Amended Complaint on March 7,
2011.  The First Amended Complaint seeks a declaration that there
is no coverage under the Gemini Policy, and, therefore, Gemini
does not have a duty to defend or indemnify KDC in the Underlying
Actions.  It alleges that: (1) there was no "bodily injury" or
"property damage"; (2) there was no "occurrence"; (3) the
"expected or intended injury" exclusion applies; (4) the
"pollution" exclusion applies; and (5) the "punitive damage"
exclusion applies.  [First Amended Complaint at ¶¶ 47, 96.]

KDC filed a Third-Party Complaint against Indian Harbor
Indian Harbor on March 29, 2011, seeking, among other things, a
declaration that Indian Harbor has a duty to defend and indemnify
KDC with respect to the Underlying Actions, and a determination
that Indian Harbor breached the implied covenant of good faith
and fair dealing.  [KDC's Third-Party Complaint (dkt. no. 34) at
¶¶ 20, 27, 40.]

Indian Harbor filed a First Amended Counterclaim
against Gemini and KDC on May 10, 2011.  [Dkt. no. 46.]  The
First Amended Counterclaim asserts that Indian Harbor has no duty
to defend or indemnify Defendants because the Indian Harbor

4

Policy "provides only excess insurance by virtue of its 'other insurance' clause . . . ." [Indian Harbor's First Amended Counterclaim at ¶¶ 16, 21.]

## I.   Indian Harbor Motion

Indian Harbor moves for summary judgment on the grounds that: (1) Gemini has a duty to defend KDC; (2) Indian Harbor does not have a duty to defend KDC because the Indian Harbor Policy is excess to the Gemini Policy; (3) Indian Harbor is not liable to KDC for breach of the implied covenant of good faith and fair dealing; and (4) Indian Harbor has no obligation to two KDC entities – DMB Associates (Hawaii), Inc. ("DMB Associates") and A&B Properties, Inc. ("A&B Properties") – because they are not "insureds" under the Indian Harbor Policy.  According to Indian Harbor, it is entitled to a legal ruling that its "excess" clause makes its policy excess for the defense of the underlying lawsuits to the Gemini Policy, which contains a "primary/pro rata" clause, such that Indian Harbor has no current duty to defend KDC in the Underlying Actions.[2]  [Mem. in Supp. of Indian Harbor Motion at 1.]

According to Indian Harbor, the Schredder Action alleges that the plaintiffs in that action have been "physically and emotionally injured," that their home has been "physically

_____

[2] The Erickson claim is not a subject of the Indian Harbor Motion.  [Mem. in Supp. of Indian Harbor Motion at 3 n.2.]

damaged," that they have suffered "loss of and damage to personal property," and that they have suffered various "economic injuries," as a result of KDC's construction activities, including from "dust, noise, dynamite blasts, toxic fumes, dirt, rats and rodents, and other offensive nuisances." [Indian Harbor Separate and Concise Statement of Facts ("CSF"), Declaration of Max Stern ("Stern Decl."), Exh. 4 (Shredder Complaint), at ¶¶ 14-15, 17, 30, 32.] The Schredder Action contains claims for negligence/gross negligence, trespass, nuisance, and negligent/intentional infliction of emotional distress. [Id. at ¶¶ 21-32.] The Schredder plaintiffs seek special, general, and punitive damages. The HIG Action alleges that KDC's construction activities have caused "an enormous amount of noise, dirt, dust, toxic fumes and pests" to enter the Schredder plaintiffs' property. [Id., Exh. 6 (HIG Complaint), at ¶ 11.] It asserts causes of action for negligence, gross negligence, nuisance, trespass, and loss of quiet enjoyment. HIG seeks compensatory and punitive damages. [Id.] Finally, the AOAO Action alleges that KDC's blasting activities have "resulted in approximately eight (8) breaks in the underground water supply lines." [Id., Exh. 7 (AOAO Complaint), at ¶ 13.] This action also alleges that the construction activities "generated dust, red dirt and other airborne participles" which traveled to plaintiffs' properties. [Id. at ¶ 14.] The AOAO Action contains causes of action for

negligence, trespass/battery, nuisance, and punitive damages. The AOAO plaintiffs also seek special, general, compensatory and consequential damages.

Indian Harbor issued to Kukui'ula South Shore Community Services, LLC a Pollution and Remediation Legal Liability policy number PEC0015663, in effect between December 31, 2003 and December 31, 2013.  [Id., Exh. 1 (Indian Harbor Policy).] Kukui'ula Development Company (Hawaii), LLC; DMB Kukui'ula LLC; and KDC, LLC are Additional Named Insureds under the policy pursuant to Endorsement Nos. 3 and 10.  [Id.]  The Indian Harbor Policy contains the following Insuring Agreement:

I. INSURING AGREEMENT

A. Coverage A – POLLUTION LEGAL LIABILITY

The Company will pay on behalf of the INSURED for LOSS from POLLUTION CONDITIONS on, at, under or emanating from the location(s) stated in the Pollution Legal Liability Schedule, which the INSURED has or will become legally obligated to pay as a result of a CLAIM first made against the INSURED during the POLICY PERIOD, provided that the INSURED reports the CLAIM to the Company, in writing, during the POLICY PERIOD or, if applicable, the Automatic or Optional Extended Reporting Period.

. . . .

C. Coverage C – LEGAL DEFENSE EXPENSE

The Company will pay on behalf of the INSURED for LEGAL DEFENSE EXPENSE to defend a CLAIM for LOSS or for REMEDIATION EXPENSE under Coverage A – POLLUTION LEGAL LIABILITY, Coverage B – REMEDIATION LEGAL LIABILITY or Coverage D – CONTINGENT TRANSPORTATION COVERAGE, to which this

7

Policy applies.  The Company shall have the right
and the duty to defend the INSURED against any
CLAIM seeking damages for a LOSS, or for
REMEDIATION EXPENSE.  The Company will have no
duty to defend the INSURED against any CLAIM for
LOSS or for REMEDIATION EXPENSE to which this
policy does not apply.

[Id. at 1-2.]

The Indian Harbor Policy contains the following

Conditions:

IX. CONDITIONS

. . . .

I. OTHER INSURANCE – Subject to Section VI.,
Limits of Liability and Retention, this insurance
shall be in excess of the Retention Amount stated
in the Declarations and any other valid and
collectible insurance available to the INSURED,
whether such other insurance is stated to be
primary, pro rata, contributory, excess,
contingent or otherwise, unless such other
insurance is written only as specific excess
insurance over the limits of liability provided in
this Policy.

[Id. at 11.]

Indian Harbor states that the Gemini Policy includes

Commercial General Liability ISO form CG 00 01 10 01, which

provides in pertinent part as follows:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE
LIABILITY

1. Insuring Agreement

a.   We will pay those sums that the insured
becomes legally obligated to pay as damages
because of "bodily injury" or "property damage" to

8

which this insurance applies.  We will have the
right and duty to defend the insured against any
"suit" seeking those damages. . . .

    b.   This insurance applies to "bodily
injury" and "property damage" only if:

      (1) The "bodily injury" or "property
      damage" is caused by an "occurrence"
      . . . .

2. Exclusions

This insurance does not apply to:

    a. Expected or Intended Injury
    "Bodily injury" or "property damage" expected
    or intended from the standpoint of the
    insured. . . .

    . . . .

    f. Pollution
      (1) "Bodily injury" or "property damage"
      arising out of the actual, alleged or
      threatened discharge, dispersal,
      seepage, migration, release or escape of
      "pollutants": [in certain specified
      situations].
. . . .

SECTION V – DEFINITIONS
. . . .
3. "Bodily injury" means bodily injury, sickness
or disease sustained by a person, including death
resulting from any of these at any time.

. . . .

13. "Occurrence" [as modified by Endorsement]
means an accident, including continuous or
repeated exposure to substantially the same
general harmful conditions that first happens
during the term of this insurance.  "Property
damage" or "bodily injury" which commenced prior
to the effective date of this insurance will be
deemed to have happened prior to, and not during,
the term of this insurance.

. . . .

15. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

. . . .

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

[Id., Exh. 2 (Gemini Policy), at 1-3, 13-15 (alterations Indian Harbor's).]

The Gemini Policy also includes a "Punitive Damages Exclusion" that provides: "It is agreed that the insurance afforded by this policy does not apply to punitive or exemplary damages awarded against the insured."  [Id. at Endorsement. No. 9.]  In addition, the Gemini policy has an "other insurance" provision that provides:

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

. . . .

4. Other Insurance
If other valid and collectible insurance is available to the insured for a loss we cover under

10

Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance
This insurance is primary except when b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance
This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added

11

as an additional insured by attachment or an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit."  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

> (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

> (2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not brought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. Method of Sharing
If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

[Id. at 11-12.]

12

In its argument, Indian Harbor first contends that New York law governs the determination of its obligations to KDC under the Indian Harbor Policy because the parties agreed to a choice of law clause and because New York has at least some nexus to Indian Harbor. [Mem. in Supp. of Indian Harbor Motion at 12-13.] The Indian Harbor Policy has a choice of law provision in the "Conditions" of its policy, which provides:

> L.   CHOICE OF LAW – All matters arising hereunder including questions related to the validity[,] interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).

[Stern Decl., Exh. 1 (Indian Harbor Policy).]

Indian Harbor asserts that it has significant contacts with New York, including: its corporate parent, XL Specialty Insurance Company, which is in turn a subsidiary of XL Reinsurance America Inc., is incorporated in New York; it conducts the business of insurance out of multiple locations in the U.S., including an office in New York; the following directors, officers, and employees are located in this New York office: the CEO/President/Chairman of Indian Harbor; the General Counsel for Indian Harbor, and four of Indian Harbor's eight corporate directors, the Global Head of Claims for XL Insurance, the ultimate head of the claims department and reporting chain responsible for handling the claims at issue in this action, is

13

located in this New York office; and XL Environmental, the XL
Insurance business unit that underwrote this policy, has
underwriters located in this New York office.  [Indian Harbor
CSF, Declaration of J. Robert McMahon ("McMahon Decl."), at ¶¶ 3-
11.]

          Next, Indian Harbor argues that it has no obligation to
defend KDC because the Indian Harbor policy is excess to the
Gemini Policy by virtue of Indian Harbor's "other insurance"
clause, and because Gemini has a duty to defend.  Indian Harbor's
policy has an "excess" clause, while Gemini's policy has a
primary/"pro rata" clause.  It argues that, under New York and
Hawai'i law, a policy with an "excess" clause is excess to a
policy with a primary/"pro rata" clause.  That is, Indian Harbor
has no obligation to defend KDC unless and until the Gemini
Policy is no longer valid and collectible for KDC's defense
(*e.g.*, until the Gemini Policy limits are exhausted).  [Mem. in
Supp. of Indian Harbor Motion at 14.]

          Indian Harbor argues that, under applicable Hawai'i
law, Gemini does have a duty to defend in the Underlying Actions
because: (1) the Shredder Action includes claims involving
"bodily injury," and "property damage"; (2) neither the
"occurrence" definition nor the "expected or intended injury"
exclusion apply where KDC's intent is a fact that will be
litigated in the Underlying Actions, and there are also

14

allegations of unintended injury, inter alia, negligence, nuisance, and negligent infliction of emotional distress ("NIED"); (3) the pollution exclusion does not apply because there are allegations regarding dynamite blasts, rodents, pests, noise, and underground water supply lines that do not qualify as "pollutants," and are potentially covered claims; (4) the punitive damages exclusion does not apply because the Underlying Actions seek non-punitive, compensatory damages as well, and are potentially covered damages.  In sum, Indian Harbor argues that there are allegations in each of the Underlying Actions that are potentially covered by the Gemini Policy, and, therefore, Gemini has a duty to defend KDC in each of these lawsuits, and Indian Harbor's policy is excess for purposes of defense, with no current obligation to pay defense costs.  [Id. at 20-26.]

Next, Indian Harbor asserts that it is not liable to KDC for breach of the implied covenant of good faith and fair dealing because, if it has no current duty to defend, it cannot be liable in bad faith as a mater of law.  Further, under New York law, there is no bad faith as a matter of law when "the insurer has an arguable basis for denying coverage."  [Id. at 27 (quoting Redcross v. Aetna Cas. &Sur. Co., 688 N.Y.S.2d 817, 821 (N.Y. App. 1999)).]  Here, whether Indian Harbor's "excess" provision operates to make Indian Harbor's policy excess is at least an open question of law and qualifies as a "reasonable

15

question" and an "arguable basis" for declining to defend KDC at this time.  Indian Harbor argues that it reasonably relied on clear New York authority that dictates that its policy is excess and the majority of jurisdictions that have so held.  [Id. at 28.]

> ### A.  <u>Gemini Memorandum in Opposition</u>

Gemini argues that Indian Harbor is not entitled to summary judgment because the Indian Harbor policy is not "excess," but is KDC's primary policy for pollution claims. Gemini states that, even if its own motion for summary judgment is denied, Indian Harbor nevertheless owes a duty to defend because of the possibility of coverage under its policy for the pollution claims against KDC.  [Gemini Mem. in Opp. to Indian Harbor Motion at 2-3.]

Gemini asserts that, because the damages alleged in the Underlying Actions arise from dirt, dust, toxic fumes, and other substances which satisfy the definition of "pollutants" within the Gemini Policy, coverage is precluded for the Underlying Actions.  [Id. at 13.]  The alleged red dirt, dust and other airborne particles, toxic fumes, toxic dust, diesel fumes, pesticides and other poisons generated by KDC's construction activities constitute alleged "pollutants" within the plain meaning of the Gemini Policy exclusion.  Where no coverage is afforded under the Gemini Policy, such insurance plainly does not

constitute "other valid and collectible insurance" available to the insureds.  Moreover, language contained in the Gemini pollution exclusion roughly mirrors that found in the insuring provisions of the Indian Harbor Policy.  As such, the same analysis resulting in a finding that the pollution exclusion bars coverage under the Gemini Policy will result in a finding of coverage under the Indian Harbor Policy.  [Id.]  Gemini argues that coverage is, therefore, triggered under the Indian Harbor Policy and excluded by the pollution exclusion of the Gemini Policy.  [Id. at 23.]

With respect to the choice of law, Gemini states that the Court's analysis of an insurer's duty to defend is substantially similar under both Hawai'i and New York law.  It argues that the Indian Harbor Policy is not "excess" because it did not insure the same risk as the Gemini Policy.  Further, because coverage is precluded by the pollution exclusion, the Gemini Policy does not constitute "other valid and collectible insurance" available to KDC within the plain meaning of the Indian Harbor Policy.  [Id. at 24-25.]

B.   **KDC Memorandum in Opposition**

KDC filed its opposition on November 21, 2011.[3]  [Dkt.

---

[3] KDC also filed its Evidentiary Objections to Declaration of J. Robert McMahon, [dkt. no. 141-36,] arguing that Mr. McMahon lacks personal knowledge necessary to testify regarding any contacts Indian Harbor has with New York.  In response, Indian
(continued...)

no. 140.]  It first states that the Indian Harbor Motion does not dispute its potential to provide coverage under the Indian Harbor Policy for pollution-related claims in the Underlying Actions. It maintains that the "other insurance" clause does not apply because the Indian Harbor and Gemini Policies do not cover the same risk, and accordingly, Indian Harbor must provide both a defense and indemnity for each of the Underlying Actions.  [KDC Mem. in Opp. to Indian Harbor Motion at 1-2.]

First, KDC contends that the Court should apply Hawai`i law in its analysis of the Indian Harbor Policy.  It states that, while the Hawai`i Supreme Court has ruled on choice of law issues, the question whether a choice of law provision included within an insurance policy, a contract of adhesion, is enforceable, is one of first impression.  In any event, KDC argues that New York has no nexus with Indian Harbor, the

---

[3](...continued)
Harbor claims that Mr. McMahon is the Assistant Vice President & Line of Business Manager for the company (XL Specialty Insurance Company) that is solely responsible for the claims handling for Indian Harbor's Pollution and Remediation Legal Liability policies.  A person in his position and acting in that capacity has the personal knowledge to discuss Indian Harbor and Indian Harbor's contacts.  Further, Mr. McMahon testified that: he personally knows Indian Harbor's Chairman/CEO/President is based in the New York office; he personally knows that Indian Harbor pollution policies are issued from New York; and he personally knows that his ultimate boss in the XL Insurance claims department, the XL Insurance Global Head of Claims, is based in that New York office.  All of this personal knowledge is sufficient foundation to testify that Indian Harbor conducts business out of the New York office.  [Indian Harbor Response, filed 11/28/11 (dkt. no. 151-1), at 2-7.]

underlying claimants, the Indian Harbor Policy, or the locations where the policy was to be delivered and performed, whereas Hawai`i has a strong interest in seeing its laws applied in this action.  [Id. at 7-12.]

Next, KDC argues that the Indian Harbor Policy does not insure the same risk as the Gemini Policy, thereby making the "other insurance" clause inapplicable under either New York or Hawai`i law.  It argues that the application of such clauses is predicated on the availability of multiple policies, each insuring the same loss or risk; it is a condition precedent to show that the same risk is covered by both policies.  [Id. at 14-19.]

It argues that the tort of bad faith is covered by Hawai`i law, because tort claims are not governed by contractual choice of law provisions.  [Id. at 19 (citing Sutter Home Winery, Inc. v. Vintange, Ltd., 971 F.2d 401, 407-08 (9th Cir. 1992)).] KDC argues that a question of fact exists as to whether Indian Harbor breached the covenant of good faith and fair dealing by failing to contribute to the defense because Indian Harbor's interpretation of its own policy is patently unreasonable under either Hawai`i or New York law.  It states that there "is no reported case that applies the 'other insurance' claim where the policies in question cover different risks."  [Id. at 21.]

19

### C.    Lloyds' Memorandum in Opposition

Lloyds filed its opposition on November 21, 2011.
[Dkt. no. 138.]   It makes similar arguments that the Indian
Harbor Policy is not "excess" because it covers pollutants, which
are excluded under the Gemini Policy.   Lloyds states that its
policy, like Gemini's, includes a pollution exclusion, which
provides, in pertinent part, as follows:

> f. Pollution
>
>> (1) "Bodily injury" or "property damage"
>> arising out of the actual, alleged or
>> threatened discharge, dispersal, seepage,
>> migration, release or escape of "pollutants":
>>
>>> (a) At or from any premises, site or
>>> location which is or was at any time
>>> owned or occupied by, or rented or
>>> loaned to, any insured. However, this
>>> subparagraph does not apply to:
>>>
>>>> (i) "Bodily injury" if sustained
>>>> within a building and caused by
>>>> smoke, fumes, vapor or soot from
>>>> equipment used to heat that
>>>> building;
>>>>
>>>> (ii) "Bodily injury" or "property
>>>> damage" for which you may be held
>>>> liable, if you are a contractor and
>>>> the owner or lessee of such
>>>> premises, site or location has been
>>>> added to your policy as an
>>>> additional insured at that
>>>> premises, site or location and such
>>>> premises, site or location is not
>>>> or never was owned or occupied by,
>>>> or rented or loaned to, any
>>>> insured, other than that additional
>>>> insured;
>>>> or

20

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

. . . .

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; . . . .

[Lloyds' Mem. in Opp. to Indian Harbor Motion at 2-3 (quoting Exh. A to KDC's Cross-Claim Against Additional Defendant Certain Underwriters at Lloyds (Lloyds Policy), at 4).] Lloyds states that the Indian Harbor Policy is the mirror image of the pollution exclusion under the Gemini and Lloyds Policies.

Lloyds argues that, under either Hawai`i or New York insurance law, Indian Harbor owes KDC a defense under the Indian Harbor Policy. To the extent that Indian Harbor's coverage overlaps with the exclusions in the CGL policies, there is not other "valid and collectible insurance" and Indian Harbor's coverage is primary. If there is a possibility of coverage under its policy with respect to any claim asserted in an Underlying Actions, then Indian Harbor has an obligation to provide its insureds with a defense as to the entire action. [Id. at 10-12.]

21

D.   **Indian Harbor Replies**

1.   **Reply to KDC Opposition**

Indian Harbor first responds that, under New York law applicable to the Indian Harbor policy, if two or more liability insurance policies have an obligation to defend an underlying lawsuit, the "other insurance" provisions determine the priority of that defense obligation.  [Indian Harbor Reply to KDC Mem. in Opp. to Indian Harbor Motion at 1.]  It argues that the Indian Harbor Policy states that it is excess over "any other valid and collectible insurance available to the insured," and the Gemini policy provides that it is a primary policy; neither policy limits application of its "other insurance" provision based on the type of policies or liabilities at issue; and Gemini's policy is "valid and collectible insurance" for purposes of KDC's defense and, as such, is primary to Indian Harbor's excess policy.  [Id. at 1-2.]

2.   **Reply to Gemini and Lloyds Oppositions**

In its reply to the other insurers' oppositions, Indian Harbor repeats its argument that both it and Gemini potentially have defense and indemnity liability for at least some of the claims in the Underlying Actions, and, therefore, the "other insurance" provisions determine the priority of that defense obligation.  Gemini's policy provides "valid and collectible insurance" for purposes of KDC's defense, and the plain meaning

22

of the Indian Harbor Policy should be enforced.  [Indian Harbor Reply to Gemini and Lloyds' Mems. in Opp. to Indian Harbor Motion at 2-4.]

Next, it argues that Gemini has a duty to defend KDC in the Underlying Actions and fails to negate the potential for coverage for each allegation in these suits.  It argues that there are several allegations that noise and pests caused "bodily injury" and "property damage," in addition to allegations of "bodily injury" and "property damage" caused by blasting. Further, with respect to the pollution exclusion, Gemini has failed to demonstrate that the red dust, dirt, and toxic fumes were "brought on or to the premises, site or location," as required for the relevant subsection of the pollution exclusion to apply.  Having failed to establish that it has no duty to defend, Indian Harbor argues that summary judgment should be granted in Indian Harbor's favor that Gemini has a duty to defend the underlying lawsuits.  [Id. at 6-10.]

## II.  Gemini Motion

Gemini moves for partial summary judgment on the grounds that it has no duty to defend or indemnify Defendants with respect to the Underlying Actions and the Erickson claim because the damages alleged were caused by dust and other "pollutants" as defined by the Gemini Policy, and therefore coverage is barred by the policy's pollution exclusion.

23

The Gemini Policy contains the following insuring agreement:

> 1. Insuring Agreement
>
>> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may  result. . .
>>
>> b. This insurance applies to "bodily injury" and "property damage" only if:
>>
>>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> . . . .

[Mem. in Supp. of Gemini Motion at 7-8 (quoting Gemini Policy).]

Pursuant to this provision, in order for there to be liability coverage under the Gemini Policy, there must be an "occurrence" that causes "bodily injury" or "property damage".

In SECTION V - DEFINITIONS, the Gemini Policy defines "bodily injury" and "property damage" as follows:

> "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> "Property damage" means:
>
>> a. Physical injury to tangible property

24

> including all resulting loss of use of that
> property.  All such loss of use shall be
> deemed to occur at the time of the physical
> injury that caused it; or
>
> b. Loss of use of tangible property that is
> not physically injured.  All such loss of use
> shall be deemed to occur at the time of the
> "occurrence" that caused it.

[Id. at 8 (quoting Gemini Policy).]

The Gemini Policy contains an endorsement, AMENDED
DEFINITIONS ENDORSEMENT - "OCCURRENCE" AND DUTY TO DEFEND (Form
CR 0200 08 04) ("Occurrence Endorsement") which defines the term
"occurrence" as follows:

> "Occurrence" means an accident, including
> continuous or repeated exposure to substantially
> the same general harmful conditions that first
> happens during the term of this insurance . . . .

[Id. (quoting Gemini Policy).]  The Occurrence Endorsement
further expressly provides that Gemini shall have no obligation
"to defend any 'suit' against the 'insured' or any additional
insured if such 'suit' does not allege an 'occurrence' as defined
in this endorsement."  [Id. at 9.]

Gemini states that it is currently providing a defense
with respect to the Underlying Actions pursuant to a full
reservation of rights.  [Id. at 9 (citing Gemini's Concise
Statement of Facts ("CSF"), Exh. 5 (6/17/09 Reservation of Rights
Letter)).]

Gemini first argues that coverage is unambiguously
precluded by the policy's pollution exclusion, which provides:

25

> This insurance does not apply to:
> . . . .
> f. Pollution
>
> (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
>
> . . . .
>
> (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

[Id. at 12 (quoting Gemini Policy).]  In SECTION V - DEFINITIONS, the Gemini Policy defines "pollutants" as follows:

> "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

[Id. at 12-13 (quoting Gemini Policy).]

Gemini asserts that the pollution exclusion precludes liability coverage for "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at or from the Project.  It states that the injuries and damages alleged in the Underlying Actions arise predominantly from the excessive amounts of dirt and dust stirred by KDC's construction activities which migrated to the property of the Schredders and

26

AOAO-plaintiffs.  The Schredders also complain of "toxic fumes."
[Id. at 13.]

It also asserts that, even under the narrower
"traditional environmental pollution" legal standard, the
injuries alleged in the Underlying Actions arising from the dirt,
dust, and other irritants attributable to KDC's construction
activities, were caused by "pollutants" for which coverage is
barred.  [Id. at 15-20 (citing Allen v. Scottsdale Ins. Co., 307
F. Supp.2d 1170 (D. Hawai`i 2004); Apana v. TIG Ins. Co., 504 F.
Supp. 2d 998, 1006 (D. Hawai`i 2007), and on appeal at 574 F.3d
679, 682 (9th Cir. 2009); and Certain Underwriters at Lloyd's of
London v. NFC Mining, Inc., 2011 U.S. App. LEXIS 11924 (6th Cir.
June 9, 2011)).]

### A.    Indian Harbor Memorandum in Opposition

Indian Harbor argues that the Gemini Motion does not
try to disprove coverage for all claims in the Underlying
Actions.  It also argues that the naturally occurring red dirt is
not excluded under the pollution exclusion.  [Indian Harbor Mem.
in Opp. to Gemini Motion at 1-2.]

First, Indian Harbor argues that Gemini asks the Court
to find that it has no duty to defend or indemnify the Underlying
Actions in their entirety, but the Gemini Motion only seeks to
defeat coverage for some of the allegations relating to dust,
dirt, and toxic fumes, and ignores other allegations, including

damage from blasting, noise, and rats, rodents, and pests.  [Id. at 9.]

Second, Indian Harbor argues that Gemini failed to show that the pollution exclusion applies to allegations of damages because of dust, dirt, and toxic fumes.  It maintains that the naturally occurring red dirt (and resulting dust) that is part of Kauai's unique environment is not a "pollutant," and that Gemini has failed to submit any evidence to demonstrate that the red dirt here had any polluting qualities (or that all allegations of dust and dirt involved polluting qualities).  It distinguishes the cases cited by Gemini as involving toxic or contaminated dirt, crushed concrete, asphalt, refuse, toxic ingredients, coal dust, and noxious chemicals – not naturally occurring dirt and dust.  [Id. at 18-20.]

Indian Harbor urges the Court to adopt the "traditional environmental pollution" standard discussed in Nautilus Ins. Co. v. Hawk Transport Services, LLC, Case No. 10-00605, 2011 U.S. Dist. LEXIS 65663 (D. Hawai`i June 20, 2011), in which "Judge Ezra cast doubt on the prior decisions of this Court in Allen and Apana that construed pollution exclusions broadly." [Id. at 21.] Indian Harbor asserts that Nautilus ultimately stated: "a court divines from the circumstances whether a reasonable policy holder would consider the substance at issue to be a pollutant in the specific context of the underlying case." [Id. (quoting Ins.

28

<u>Co.</u>, 2011 U.S. Dist. LEXIS 65663, at *27).]  Here, Indian Harbor argues that a reasonable policy holder would not consider naturally occurring red dirt to be excluded by a pollution exclusion.

    **B.**   <u>**KDC's Memorandum in Opposition**</u>

        KDC argues that the Underlying Actions assert claims of property damage and bodily injury resulting from construction activities unrelated to conditions barred by the pollution exclusion.  Further, it relies on the Fed. R. Civ. P. 30(b)(6) deposition testimony of William Trelease and Robert Weisensee, who purportedly "confirmed Gemini's underwriting intent was to insure dust-related damage to third parties."  [KDC Mem. in Opp. to Gemini Motion at 2.]  KDC asserts that the underwriters testified that dust arising from grading activities was intended to be covered unless contaminated, and dust liability exposures were understood to be insurable; moreover, Gemini charged $1.8 million in premium, "in part, because of the known risk of red dust exposure in Hawai`i."  [<u>Id.</u>]

        Next, KDC argues that the pollution exclusion does not preclude coverage for dust or dirt.  To understand the true intent of the parties as to whether coverage is provided, KDC asks the Court to consider the 30(b)(6) testimony regarding underwriting intent.  [<u>Id.</u> at 15.]  KDC argues that the underwriter understood the likelihood of dust-related claims, and

did not include a soils exclusion in the policy.  Further, Gemini has presented no evidence that the dust or dirt was contaminated; in fact, Gemini's underwriter testified that if the dirt is not contaminated, the intent was to cover the loss.  [Id. at 18.]

KDC also argues that the pollution exclusion does not apply because Gemini has presented no evidence that the dirt and dust caused by the grading operation were "brought on or to the premises, site or location," because the dirt and dust were already on the premises.  [Id. at 19.]

KDC asks the Court to deny the Gemini Motion and enter summary judgment on these issues in favor of KDC, pursuant to Fed. R. Civ. P. 56(f)(1) and Rule LR56.1(i) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules").

## C.   Lloyds' Response

Lloyds concurs with Gemini's analysis of the pollution exclusion in the Gemini Policy – and by extension the virtually identical pollution exclusion in the Lloyds' Policy – and its applicability to the claims asserted in the Underlying Actions at issue herein.

## D.   Gemini's Reply

Gemini argues that it is entitled to summary judgment because the alleged dirt, dust, and toxic fumes qualify as "pollutants" as they are solid or gaseous "irritants" or

30

"contaminants." [Gemini Reply to all Mems. in Opp. at 8.]

It also argues that the Underlying Actions do not satisfy the Gemini Policy's "occurrence" requirement, which defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions that first happens during the term of insurance." [Id. at 14 (quoting Gemini Policy).]  Gemini states that, to the extent coverage for claims in the Underlying Actions is not excluded by the pollution exclusion, Gemini expects to seek this Court's ruling on any continued duty to defend by means of a timely motion for summary judgment regarding the "no occurrence" issue. [Id. at 15.]

## DISCUSSION

The standard for summary judgment is well-known to the parties and does not bear repeating here.  See, e.g., Rodriquez v. Gen. Dynamics Armament & Technical Prods., Inc., 696 F. Supp. 2d 1163, 1176 (D. Hawai`i 2010).

## I.  Indian Harbor Motion

Indian Harbor seeks summary judgment that it has no duty to defend KDC because the Indian Harbor Policy is excess for defense purposes to the Gemini Policy, and that it is not liable to KDC for bad faith.  It also seeks summary judgment that Gemini has a duty to defend under the Gemini Policy.  The Court first addresses the parties' arguments regarding whether New York or

31

Hawai'i law governs the interpretation of the Indian Harbor Policy, and concludes that New York law should be applied.

**A.**   **Choice of Law**

The Indian Harbor Policy's choice of law clause provides that New York law applies as follows:

> L.   CHOICE OF LAW – All matters arising hereunder including questions related to the validity[,] interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).

[Stern Decl., Exh. 1 (Indian Harbor Policy).].   The parties agree that, under Hawai'i law, a contractual choice of law provision will be upheld if that law has some nexus with either the parties or the contract.

> The Hawaii choice of law analysis places primary emphasis on the determination of "which state would have the strongest interest in seeing its laws applied to the particular case." Unified W. Grocers, Inc. v. Twin City Fire Ins. Co., 457 F.3d 1106, 1111 (9th Cir. 2006) (quoting Lewis v. Lewis, 69 Haw. 497, 748 P.2d 1362, 1365 (1988)); see also Del Monte Fresh Produce (Hawaii), Inc. v. Fireman's Fund Ins. Co., 117 Hawai'i 357, 364, 183 P.3d 734, 741 (2007).   This district court, however, has recognized that, under Hawaii law, "'a choice of law provision provided in a contract between the parties will generally be upheld.'" Hawaii Forest & Trail Ltd. v. Davey, CV 07-00538 HG-BMK, 2009 WL 47331, at *3 (D. Haw. Jan. 8, 2009) (quoting Del Monte Fresh Produce, Inc. v. Fireman's Fund Ins. Co., 117 Hawai'i 357, 364, 183 P.3d 734 (2007)).
>
> Del Monte noted that in Airgo, Inc. v. Horizon Cargo Transport, Inc., 66 Haw. 590, 595,

> 670 P.2d 1277, 1281 (1983), the Hawaii Supreme
> Court stated that parties' choice of law provision
> will be upheld if that law has some nexus with
> either the parties or the contract.  See Del
> Monte, 117 Hawai'i at 364-65, 183 P.3d 741-42.

Hawaiian Telcom Commc'ns, Inc. v. Tata Am. Int'l Corp., Civil No.

10-00112 HG-LEK, 2010 WL 2594482, at *5 & n.7 (D. Hawai'i May 24,

2010).

The parties hotly dispute whether the parties or the

policy have a sufficient nexus with New York.  With respect to

Indian Harbor's affirmative showing, the Court finds that

Mr. McMahon has sufficient personal knowledge with respect to the

matters set forth in his declaration.  That is, although it is a

North Dakota corporation, Indian Harbor conducts the business of

insurance out of multiple locations, including an office in New

York; its directors, officers, and employees are located in this

New York office, including the General Counsel for Indian Harbor,

the Global Head of Claims for XL Insurance, the ultimate head of

the claims department responsible for handling the claims at

issue in this action are located in New York office; and

underwriters for XL Environmental, the XL Insurance business unit

that underwrote this policy, has underwriters located in New York

office.  [McMahon Decl. at ¶¶ 3-11.]  The Court therefore finds

that New York has "some nexus" with the parties, although its

relationship to the Indian Harbor Policy is more tenuous, and New

York has no apparent relationship with the insured, the claimants

in the Underlying Actions, or the location where the policy is to be performed.

The Court is also convinced, however, that Hawai'i has a strong interest in the application of its laws to the instant dispute.  KDC argues that applying New York law would undermine Hawai'i law with respect to its right to recover attorneys' fees should it prevail.  Further, the Gemini and Lloyds Policies appear to be governed by Hawai'i law, thus, the Court will be forced to apply different laws to the different policies.  On balance, however, these considerations do not overcome the choice of law analysis.  KDC voluntarily purchased the Indian Harbor Policy with a New York choice of law clause, and the Court will uphold the clear expectations of the contracting parties.

To the extent the Court is presented with a matter of first impression, however, the Court forecasts that Hawai'i courts would apply the "some nexus" contractual choice of law analysis set forth above to insurance contracts, rather than simply apply the law of the forum with the greatest interest in the dispute.  That is, the parties' choice of law provision will be upheld if that law has some nexus with either the parties or the policy.  See Del Monte, 117 Hawai'i at 364-65, 183 P.3d 741-42; Airgo, 66 Haw. at 595, 670 P.2d at 1281.  Here, despite the somewhat tenuous relationship with all relevant parties and the policy, all that is required for the choice of law provision

34

to apply is "some nexus," which the Court finds is satisfied. Indian Harbor, the insurer, has "some nexus" to New York.  The Court therefore applies the law of New York to the interpretation of the Indian Harbor Policy.

### B.  Excess Policy

Indian Harbor seeks summary judgment on its claim that it does not have a duty to defend KDC because the Indian Harbor Policy is excess to the Gemini Policy.  The Indian Harbor Policy contains the following "other insurance" language:

> I. OTHER INSURANCE – Subject to Section VI., Limits of Liability and Retention, this insurance shall be in excess of the Retention Amount stated in the Declarations and any other valid and collectible insurance available to the INSURED, whether such other insurance is stated to be primary, pro rata, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the limits of liability provided in this Policy.

[Stern Decl., Exh. 1 (Indian Harbor Policy), at 11.]

The other parties argue that this "other insurance" clause does not apply because the Indian Harbor and Gemini Policies do not cover the same risk, and accordingly, Indian Harbor must provide both a defense and indemnity for each of the Underlying Actions.  The Indian Harbor Policy expressly affords coverage for "pollution conditions," while the Gemini and Lloyds Policies expressly exclude coverage for the discharge, dispersal or release of pollutants.  The Indian Harbor Policy states:

I. INSURING AGREEMENT

A. Coverage A – POLLUTION LEGAL LIABILITY

> The Company will pay on behalf of the INSURED
> for LOSS from POLLUTION CONDITIONS on, at, under
> or emanating from the location(s) stated in the
> Pollution Legal Liability Schedule, which the
> INSURED has or will become legally obligated to
> pay as a result of a CLAIM first made against the
> INSURED during the POLICY PERIOD, provided that
> the INSURED reports the CLAIM to the Company, in
> writing, during the POLICY PERIOD or, if
> applicable, the Automatic or Optional Extended
> Reporting Period.

[Id. at 1-2.]

The Indian Harbor Policy covers "pollution conditions,"
which are defined as the "discharge, dispersal, release, seepage,
migration, or escape of any solid, liquid, gaseous or thermal
pollutant, irritant or contaminant, including but not limited
to smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals,
hazardous materials, waste materials. . . ," [id. at 3,] and
likely includes the alleged toxic fumes, toxic dust, diesel
fumes, pesticides and other poisons generated by or involved in
KDC's construction activities.  The Gemini Policy, on the other
hand, includes a pollution exclusion, precluding coverage of "any
solid, liquid, gaseous or thermal irritant or contaminant,
including smoke, vapor, soot, fumes, acids, alkalis, chemicals
and waste.  Waste includes materials to be recycled,
reconditioned or reclaimed." [Id., Exh. 2 (Gemini Policy), at
13-15.]  Thus, Indian Harbor's grant of coverage appears to be

36

roughly the mirror image of the pollution exclusion under the CGL policies issued by Gemini and Lloyds.  That is, the Indian Harbor Policy expressly covers what the Gemini Policy excludes.

Applying the law of New York, the Court concludes that Indian Harbor is not entitled to summary judgment that it has no duty to defend based on its policy's "other insurance" clause. Indian Harbor argues that its policy is "excess" based on the recent decision in Fieldston Property Owners Ass'n, Inc. v. Hermitage Insurance Co., Inc., 16 N.Y.3d 257 (2011).  In that case, the court explained the general standard as follows:

> In resolving insurance disputes, we first look to the language of the applicable policies (see Raymond Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa., 5 NY3d 157, 162 [2005]).  If the plain language of the policy is determinative, we cannot rewrite the agreement by disregarding that language (see id.).

Id. at 264.  In Fieldston, unlike in the instant matter, both of the policies at issue covered claims of injurious falsehood alleged in the underlying actions, i.e., the same loss.  As a result, the Fieldston court held that, one policy's "primacy on the injurious falsehood claim triggers a primary duty to defend against the remaining causes of action in the two complaints, thus preempting any obligation," by the other insurer.  Id.  With respect to primary and excess insurance, Fieldston explains as follows:

> [A] "primary insurer has the primary duty to defend on behalf of its insureds", and it

37

generally has no "entitlement to contribution from an excess insurer[.]"  Although an excess insurance carrier may elect to participate in an insured's defense to protect its interest, it has "no obligation to do so".

As relevant here, Federal's D&O policy provides that its coverage is excess where "any Loss arising from any claim made against the Insured(s) is insured under any other valid policy(ies)."  "Loss" as defined in the D&O policy includes "Defense Costs."  Based on the broad duty to defend, and upon the conceded possibility that Hermitage's CGL policy covers at least one cause of action in each of the two underlying complaints, Hermitage has a duty to provide a defense to the entirety of both complaints.  Thus, under the terms of Federal's D&O policy, there does exist "other insurance" which would cover the "loss" arising from the defense of the two underlying actions.  Accordingly, Hermitage had an obligation to defend both of the underlying actions without contribution from Federal, notwithstanding the fact that Federal would appear to have an obligation to indemnify Fieldston for a greater proportion of the causes of action, if successfully prosecuted.

Id. at 264-65 (citations and some quotation marks omitted).

"An 'other insurance' clause "limit[s] an insurer's liability where other insurance may cover the same loss[.]" Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, PA, 878 N.Y.S.2d 339, 344 (2009) (citing 15 Couch on Insurance 3d § 219:1) (emphasis added).  Here, the parties dispute whether the policies cover the same claims.  On the current record, it appears the policies do not cover the same risks and do not provide the same level or type of coverage.  The allegations in the Underlying Actions may create the potential for coverage

under the Indian Harbor Policy, while the Gemini policy does not

insure pollution claims, but covers the property damage and

bodily injury claims alleged in the Underlying Actions not caused

by pollution.  The Gemini Policy is primary in most respects, but

not with respect to pollution conditions.  The Indian Harbor

Policy is, therefore, not excess with respect to pollution.  See

Sport Rock Int'l, Inc., 878 N.Y.S.2d at 344 (citing 15 Couch on

Insurance 3d § 219:1) ("Where the same risk is covered by two or

more policies, each of which was sold to provide the same level

of coverage (as is the case here), priority of coverage (or,

alternatively, allocation of coverage) among the policies is

determined by comparison of their respective 'other insurance'

clauses[.]"")); Great N. Ins. Co. v. Mount Vernon Fire Ins. Co.,

92 N.Y.2d 682, 686-87 (1999) ("In insurance contracts the term

'other insurance' describes a situation where two or more

insurance policies cover the same risk in the name of, or for the

benefit of, the same person[.]") (citation omitted); accord

Rhone-Poulenc, Inc. v. Int'l Ins. Co., No. 94 C 3303, 1996 WL

328011, at *13 (N.D. Ill. June 11, 1996) ("The [Environmental

Impairment Liability ("EIL")] coverage clearly was intended to

provide primary coverage for residual pollution to fill gaps that

developed in CGL coverage.").

        Under the circumstances and based on the current

record, the Court concludes that Indian Harbor has not

39

established as a matter of law that it has no duty to defend
based on the "other insurance" clause in the Indian Harbor
Policy.  The Indian Harbor Motion is DENIED with respect to this
issue.

### C.   **Bad Faith**

        Next, Indian Harbor seeks summary judgment on KDC's bad
faith claim.  KDC argues that the tort of bad faith issue is
covered by Hawai`i law, because tort claims are not governed by
contractual choice of law provisions.  As the Ninth Circuit
stated in Sutter Home Winery, Inc. v. Vintange, Ltd., 971 F.2d
401, 407 (9th Cir. 1992), "[c]laims arising in tort are not
ordinarily controlled by a contractual choice of law provision.
Rather, they are decided according to the law of the forum
state." (Citing Consolidated Data Terminals v. Applied Digital
Data Sys., 708 F.2d 385, 390 n.3 (9th Cir. 1983)).  In
Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 218 (1985), however,
the Supreme Court held that a tort claim under Wisconsin law for
the bad faith handling of an insurance claim was "inextricably
intertwined" with matters of contract interpretation, and was
pre-empted by § 301 of the Labor Management Relations Act, as
follows: "Because the right asserted not only derives from the
contract, but is defined by the contractual obligation of good
faith, any attempt to assess liability here inevitably will
involve contract interpretation."  In any event, the Court need

not decide which state's law applies to the bad faith claim at this time, because, for purposes of the instant motion, the result is the same.

The Court acknowledges that "there remains a strong presumption in New York against a finding of bad faith liability by an insurer." Hugo Boss Fashions, Inc. v. Federal Ins. Co., 252 F.3d 608, 624 (2d Cir. 2001).  The Court finds, nonetheless, that under either New York or Hawai'i insurance law regarding bad faith, Indian Harbor's denial of KDC's claim is to be assessed based upon either its reasonableness, an arguable difference of opinion, or gross disregard for its policy obligations.  Compare Pavia v. State Farm Mut. Auto. Ins. Co., 82 N.Y.2d 445, 453 (1993) ("in order to establish a prima facie case of bad faith, the plaintiff must establish that the insurer's conduct constituted a 'gross disregard' of the insured's interests"); and Greenidge v. Allstate Ins. Co., 312 F. Supp. 2d 430, 440 (S.D.N.Y. 2004), aff'd by 446 F.3d 356 (2d Cir. 2006) (holding that the insureds "could still have a viable claim here if Allstate declined the settlement proposal based on unreasonable construction of the policy.  But that is not the case.  First, even if Allstate's interpretation were mistaken, it is far from unreasonable, as demonstrated by the fact that Allstate obtained opinion letters from two separate sets of outside counsel that confirmed its reading of the policies."); with Miller v. Hartford

41

Life Ins. Co., No. SCCQ-11-0000329, --- P.3d ----, 2011 WL 6811570, at *15 (Haw. Dec. 28, 2011) ("The burden of proof for bad faith liability is not insubstantial.  As we stated in Best Place [v. Penn America Insurance Co., 82 Hawai'i 120, 920 P.2d 334 (1996)], an insurer's conduct that is based on an interpretation of the insurance contract that is reasonable does not constitute bad faith; moreover, an erroneous decision not to pay a claim for benefits due under a policy does not by itself prove liability.  Rather, the decision not to pay a claim must be in 'bad faith' in order to prove liability."); and Enoka v. AIG Hawaii Ins. Co., Inc., 109 Hawai'i 537, 552, 128 P.3d 850, 865 (2006) ("where an insurer denies the payment of no-fault benefits based on 'an open question of law,' there is 'obviously no bad faith on the part of the insurer in litigating that issue'") (citation omitted).

         KDC argues that a question of fact exists as to whether Indian Harbor breached the covenant of good faith and fair dealing by failing to contribute to the defense because Indian Harbor's interpretation of its own policy is patently unreasonable under either Hawai'i or New York law.  Indian Harbor, on the other hand, argues that whether its policy is excess is at least an "open question" of law and qualifies as a "reasonable question" and an "arguable basis" for declining to defend KDC at this time; it argues that it "reasonably relied on

clear New York authority that dictates that its policy is excess and the majority of jurisdictions that have so held." [Mem. in Supp. of Indian Harbor Motion at 28.]

Under either New York or Hawaiʻi law, Indian Harbor has not met its burden on summary judgment of establishing that it is not liable for bad faith. That is, there is a genuine issue of material fact as to whether Indian Harbor's denial of KDC's claim was reasonable Hawaiʻi law, or, whether it had presented a "reasonable question" or an "arguable basis" for declining to defend KDC, or, exhibited a gross disregard for its policy obligations under New York law. Under the circumstances and based on the current record, the Court concludes that Indian Harbor has not established as a matter of law that it is not liable for bad faith. The Indian Harbor Motion is DENIED with respect to this issue.[4]

### D.   **Unnamed Insureds**

Alternatively, Indian Harbor states that it has no duty to defend two KDC entities and is entitled to summary judgment because they are not insureds under the Indian Harbor Policy. The "FIRST NAMED INSURED" on the policy is Kukuiʻula South Shore Community Services, LLC (who is not a party to this lawsuit or

---

[4] To the extent KDC asks the Court to deny the Indian Harbor Motion and enter summary judgment on these issues in favor of KDC, pursuant to Fed. R. Civ. P. 56(f)(1) and Local Rule 56.1(i), the request is DENIED for the reasons set forth above.

any Underlying Actions).  Of the relevant entities, only

Kukui'ula Development Company (Hawaii), LLC; KDC, LLC; and DMB

Kukui'ula LLC are added as additional named insureds under the

policy by virtue of Endorsements Nos. 3 and 10.  Neither DMB

Associates (Hawaii), Inc. nor A&B Properties, Inc. are "FIRST

NAMED INSUREDS" or "Additional INSUREDS" or "Additional Named

INSUREDS" endorsed onto the Policy.  [Mem. in Supp. of Indian

Harbor Motion at 28-29.]  KDC did not oppose the Indian Harbor

Motion on this point.  The Court therefore GRANTS the Indian

Harbor Motion with respect to this issue.

     **E.**  **<u>Gemini's Duty to Defend</u>**

       Last, Indian Harbor argues that Gemini has a duty to

defend KDC in the Underlying Actions because of allegations that

noise and pests caused "bodily injury" and "property damage," in

addition to allegations of "bodily injury" and "property damage"

caused by blasting.  Further, it argues with respect to the

pollution exclusion, that Gemini has failed to demonstrate that

the red dust, dirt, and toxic fumes were "brought on or to the

premises, site or location," as required for the relevant

subsection of the pollution exclusion to apply.  For these

reasons, as well as the discussion set forth below with respect

to the Gemini Motion, the Indian Harbor Motion is GRANTED IN PART

with respect to Gemini's duty to defend based on the pollution

exclusion, but is DENIED IN PART with respect to other exclusions

for the present time.

## II.  **Gemini Motion**

Gemini moves for summary judgment that it has no duty
to defend or indemnify KDC.  At the hearing on the motions, the
Court informed the parties that it would not reach the issue of
their respective duties to indemnify because the Underlying
Actions have not concluded.  The following discussion is
therefore limited to Gemini's argument that it has no duty to
defend based upon the policy's pollution exclusion.

### A.    **Interpretation of Insurance Contracts**

#### 1.    **General Principles**

The Hawai`i Supreme Court has set forth the following
principles applicable in the interpretation of insurance
contracts:

> [I]nsurers have the same rights as
> individuals to limit their liability and to impose
> whatever conditions they please on their
> obligation, provided they are not in contravention
> of statutory inhibitions or public policy.  As
> such, insurance policies are subject to the
> general rules of contract construction; the terms
> of the policy should be interpreted according to
> their plain, ordinary, and accepted sense in
> common speech unless it appears from the policy
> that a different meaning is intended.  Moreover,
> every insurance contract shall be construed
> according to the entirety of its terms and
> conditions as set forth in the policy.
>         Nevertheless, adherence to the plain language
> and literal meaning of insurance contract
> provisions is not without limitation.  We have
> acknowledged that because insurance policies are
> contracts of adhesion and are premised on standard

> forms prepared by the insurer's attorneys, we have
> long subscribed to the principle that they must be
> construed liberally in favor of the insured and
> any ambiguities must be resolved against the
> insurer.  Put another way, the rule is that
> policies are to be construed in accord with the
> reasonable expectations of a layperson.

Guajardo v. AIG Hawai`i Ins. Co., Inc., 118 Hawai`i 196, 201-02,

187 P.3d 580, 585-86 (2008) (alteration in Guajardo) (quoting

Dairy Rd. Partners v. Island Ins. Co., 92 Hawai`i 398, 411-12,

992 P.2d 93, 106-07 (2000)).  The Hawai`i Supreme Court has also

stated: "[t]he objectively reasonable expectations of

[policyholders] and intended beneficiaries regarding the terms of

insurance contracts will be honored even though painstaking study

of the policy provisions would have negated those expectations.

These 'reasonable expectations' are derived from the insurance

policy itself . . . ."  Del Monte Fresh Produce (Hawaii), Inc. v.

Fireman's Fund Ins. Co., 117 Hawai`i 357, 368, 183 P.3d 734, 745

(2007) (citations and some quotation marks omitted) (some

alterations in original).

       Under the principles of general contract

interpretation, "[a] contract is ambiguous when the terms of the

contract are reasonably susceptible to more than one meaning."

Airgo, Inc. v. Horizon Cargo Transport Inc., 66 Haw. 590, 594,

670 P.2d 1277, 1280 (1983).

> It is well settled that courts should not draw
> inferences from a contract regarding the parties'
> intent when the contract is definite and
> unambiguous.  In fact, contractual terms should be

46

> interpreted according to their plain, ordinary
> meaning and accepted use in common speech.  The
> court should look no further than the four corners
> of the document to determine whether an ambiguity
> exists.  Consequently, the parties' disagreement
> as to the meaning of a contract or its terms does
> not render clear language ambiguous.

State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Hawai`i

315, 324, 978 P.2d 753, 762 (1999) (citations omitted).

**2.   Duty to Defend & Duty to Indemnify**

In addition, this district court has summarized the

following relevant aspects of Hawai`i law regarding the duty to

defend and the duty to indemnify.

> The burden is on the insured to establish
> coverage under an insurance policy.  See Sentinel
> Ins. Co. v. First Ins. Co. of Haw., 76 Haw. 277,
> 291 n.13, 875 P.2d 894, 909 n.13 (1994) (as
> amended on grant of reconsideration); Crawley v.
> State Farm Mut. Auto. Ins. Co., 90 Haw. 478, 483,
> 979 P.2d 74, 79 (App. 1999).  The insurer has the
> burden of establishing the applicability of an
> exclusion.  See Sentinel, 76 Haw. at 297, 875 P.2d
> at 914.
> The duty to indemnify is owed "for any loss
> or injury which comes within the coverage
> provisions of the policy, provided it is not
> removed from coverage by a policy exclusion."
> Dairy Road Partners v. Island Ins., 92 Haw. 398,
> 413, 922 P.2d 93, 108 (2000).  The obligation to
> defend an insured is broader than the duty to
> indemnify.  The duty to defend arises when there
> is any potential or possibility for coverage.
> Sentinel, 76 Haw. at 287, 875 P.2d at 904; accord
> Haole v. State, 111 Haw. 144, 151, 140 P.3d 377,
> 384 (2006) ("if there is no potential for
> indemnification, then no duty to defend will
> arise").  However, when the pleadings fail to
> allege any basis for recovery under an insurance
> policy, the insurer has no duty to defend.
> Pancakes of Hawaii, Inc. v. Pomare Props. Corp.,
> 85 Haw. 286, 291, 994 P.2d 83, 88 (Haw. Ct. App.

> 1997)).  In other words, for [the insurer] to have
> no duty to defend, it must prove that it would be
> impossible for a claim in the underlying lawsuit
> to be covered by the policy.  See Tri-S Corp. v.
> W. World Ins. Co., 110 Haw. 473, 488, 135 P.3d 82,
> 97 (2006).

Estate of Rogers v. Am. Reliable Ins. Co., Civil No. 10-00482 SOM/RLP, 2011 WL 2693355, at *4 (D. Hawai'i July 8, 2011).  The Hawai`i Supreme Court has emphasized that the duty to defend applies even if the possibility of coverage is "remote".  Tri-S Corp. v. Western World Ins. Co., 110 Hawai`i 473, 488, 135 P.3d 82, 97 (2006).  Further, "[a]ll doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured."  Id.

   "[T]he duties to defend and indemnify arise under the terms of the insurance policy, and it is through an interpretation of the terms of the policy that such duties are deemed to be owed."  Del Monte Fresh Produce, 117 Hawai`i at 369-70, 183 P.3d at 746-47 (citation omitted).

   B.   **Gemini's Motion Is Denied As to the Pollution Exclusion**

   The Gemini Policy excludes coverage for "pollutants"," which "means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."  [Stern Decl., Exh. 2 (Gemini Policy), at 3, 15.]  The Gemini Motion only seeks summary judgment for allegations relating to dust, dirt, and toxic fumes,

48

and appears to acknowledge that other allegations, including damage from blasting, noise, and rats, rodents, and pests, are covered by the Gemini Policy.

First, to the extent there are covered claims that are not excluded by the pollution exclusion, Gemini has a duty to defend in the Underlying Actions and the Erickson claim.  Gemini "is obligated to provide a defense against the allegations of covered as well as the noncovered claims." First Ins. Co., 66 Haw. 413, 418 665 P.2d 648, 652 (1983); see also id. at 417 (citing Crawford v. Ranger Ins. Co., 653 F.2d 1248, 1253 (9th Cir. 1981) ("[T]he insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage.")).  In other words, for Gemini to have no duty to defend, "it must prove that it would be impossible for a claim in the underlying lawsuit to be covered by the policy." Estate of Rogers, 2011 WL 2693355, at *4.  Gemini has not met this burden.

Second, Indian Harbor and KDC maintain that the naturally occurring red dirt and dust are not "pollutants," and Gemini has presented no evidence that the dust or dirt was contaminated for purposes of summary judgment.  They further note that Gemini has presented no evidence that the dirt and dust caused by the grading operation were brought on or to the premises, site or location, or whether the dirt and dust were

49

already on the premises.  Because there is are genuine issues of material fact regarding these issues, and because Gemini has not established that the pollution exclusion bars all claims as a matter of law, it has not met its burden on summary judgment.

Under the circumstances and based on the current record, the Court concludes that Gemini has not established as a matter of law that it has no duty to defend under the Gemini Policy's pollution exclusion.  The Gemini Motion is DENIED with respect to this issue.  The Court's ruling is limited to the issue of Gemini's duty to defend based on the pollution exclusion.[5]

## CONCLUSION

On the basis of the foregoing, Indian Harbor Insurance Company's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment Against KDC and Gemini Insurance Company, filed on July 1, 2011 [dkt. no. 54], is HEREBY GRANTED IN PART AND DENIED IN PART.  The Indian Harbor Motion is GRANTED IN PART as to (1) its duty to defend two KDC entities that are not named insureds under the Indian Harbor Policy, and (2) as to Gemini's duty to defend based on the pollution exclusion.  The

---

[5] Gemini indicates that, to the extent coverage for claims in the Underlying Actions is not excluded by the pollution exclusion, it will separately seek this Court's ruling on any continued duty to defend by means of a timely motion for summary judgment regarding the "no occurrence" issue.  The Court does not reach that issue at this time.

Indian Harbor Motion is DENIED in all other respects.

Plaintiff Gemini Insurance Company's Motion for Partial Summary Judgment, filed on July 5, 2011 [dkt. no. 59], is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 29, 2012.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

GEMINI INSURANCE COMPANY V. KUKUI`LA DEVELOPMENT COMPANY (HAWAII), LLC, ET AL; CIVIL NO. 10-00637 LEK-BMK; ORDER GRANTING IN PART AND DENYING IN PART INDIAN HARBOR INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AGAINST KDC AND GEMINI INSURANCE COMPANY; AND DENYING PLAINTIFF GEMINI INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT